## HOLLIS v. McCAMMON, MORRIS & PICKENS et al.

### No. 13216.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 6, 1935.

Rehearing Denied Sept. 27, 1935.

Charles T. Rowland and A. C. Heath, both of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellees.

LATTIMORE, Justice.

This is an appeal from an order sustaining a general demurrer to plaintiff's petition, which alleged in substance that the defendants were employed by the commissioners' court to make an audit and written report of the fees of office and of the official counts and expenditures of the public funds by the various county officials of Tarrant county, including appellant Chester Hollis as county clerk, and that the written report of the said appellees libeled the appellant, in that same charged appellant with paying a deputy more than the sum authorized by law to be so paid, and that the appellant had retained as compensation $102.33 in excess of the amount allowed by law, and that the said appellant had failed to report in his annual statement the sum of $88.73 collected as fees of office, and that appellant had failed to collect $264 as stenographic fees which should have been collected as fees of office, and that the appellant had paid $450 as salaries to clerks for copying the tax collector's delinquent tax list, stating in said report:

"These four volumes cost about $2000.00 to make—here is where they are filed (attaching two photographs thereof). We believe that it will be of interest to your Court and to the public at large to thoroughly understand the absurdity of the procedure which we have just outlined, and so that the same may be better visualized we include in this report photographic evidence ·as to what is done with these records, after they are completed.

"Two photographs—both taken in the vault beneath the County Clerk's Office—are presented in this report. The first shows a general view of a section of the vault, with the 'copies' of the delinquent tax rolls for 1926, 1927, 1928 and 1929, plainly visible.

"Could we represent to your court more strongly the folly of this charge than to say that in those four volumes—unused, untouched and perhaps completely forgotten since the day they were completed—there lies almost $2000.00 of the general funds of Tarrant County. In our opinion, the conditions brought to mind by the situation in point are so clear as to be alarming. Fees accruing to offices of the County are not simply funds of the official to run his office with as he pleased and fee officials are in error if they assume that they are operating their private businesses on the County's property. The fact that all excess fees are to be returned to the general fund of the County gives the County a certain proprietory interest in the office; surely it has the right to protect its vested interest by demanding efficient and economical operation.

"The second photograph shows a close view of the rolls, with the word for word and figure for figure copy work made evident.

"We sum up this exception as follows:

"The County Clerk pays out $450.00 in salaries to copy a delinquent tax roll—a procedure which is wholly unauthorized, uncalled for and unnecessary—which he

does not use; and in which he makes no entries.

"He fails to do what is required of him by Statute to do in order to receive the $1.00 'unaccountable,' personal fee; namely, to post the redemption certificates.

"Under the circumstances probably the most that can be done is to charge the County Clerk with the salaries paid for such uncalled for procedure, altho we feel that a more severe penalty would, in this instance, be merited.

"There is a grave question, of course, as to whether or not the Clerk was in reality entitled to any part of the unaccountable fees he received in connection with redemption receipts during the year, by reason of his failure to post the said receipts; but the fees were collected from a large number of people and no one person would have enough interest to attempt recovery, even though the Statutes provide for a four fold payment for extortion. The point brings out another major flaw of the fee system; namely, the futility of recovery attempts by the public."

Appellant alleged that such statements were fraudulently, falsely, maliciously, wantonly, and willfully published.

█ It is the contention of appellees that such reports as made by them to the commissioners' court have an unqualified privilege, but it is unnecessary for this court to pass upon that contention, since we are unanimously of the opinion that at least such report is entitled to a qualified privilege, and that such privilege extends to the protection of the authors of the report against recovery for libel unless the same shall have been made by the authors, knowing the statements were untrue, or without probable cause for any belief that the statements were true. It was the duty of the auditor to make a report to the commissioners' court of the facts as the auditor found them to be. He is not a judicial officer, and no judicial importance attaches to such audit. Rather, the special auditors are fact-finding agencies. It is of greater value and of greater importance that the auditor be encouraged to report to the commissioners' court facts which he believes to be true, provided the same are supported by evidence rendering probable that the auditor was sincere in the report, than that such auditor be crippled and handcuffed in the discharge of his duties by holding his report to that degree of perfection which makes him absolutely responsible for any error he might make, regardless of the reasonableness of his finding of fact from the evidence afforded him.

█ To allege that the auditor maliciously made a statement is not equivalent to alleging that he made the statement in bad faith. If the statement was true, it would make no difference how malicious was the attitude of the auditor in so reporting it. Likewise, if the auditor believed the statement to be true and had probable cause therefor, his motive of pleasure or regret in so reporting it is of no consequence. Therefore, to allege that the auditor made a misstatement and to allege that he made it maliciously is not the equivalent of alleging that it was made in bad faith. Likewise, the allegation that the auditor made the statement willfully is not equivalent to alleging that the statement was made without probable cause for believing it to be true.

We believe the general demurrer was therefore properly sustained, and plaintiff declining to amend, the suit was properly dismissed, and the judgment so ordering is affirmed.